**LESCHES LAW**
Levi Lesches (SBN 305173)
5757 Wilshire Blvd., Ste. 535
Los Angeles, CA 90036
Telephone: (323) 900-0580
Email: *levi@lescheslaw.com*

Attorneys for Defendants
NY & CO ECOMM LLC; NY & CO IP LLC;
and SAADIA GROUP LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KANISHA MITCHELL and KIM MOSELEY, individually, and on behalf of all similarly situated persons,<br><br>        Plaintiffs,<br><br>    v.<br><br>NY AND CO ECOMM LLC, a Delaware limited liability company; NY AND CO IP LLC, a Delaware limited liability company; and SAADIA GROUP LLC, a New York limited liability company,<br><br>        Defendants. | Case No. 2:23-cv-10117<br>Dist. Judge Hon. Michael W. Fitzgerald<br><br>**NOTICE OF MOTION BY DEFENDANTS NY & CO ECOMM LLC; NY & CO IP LLC; SAADIA GROUP LLC, TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER RULE 12(b)(1) AND RULE 12(b)(6)**<br><br>Date:  April 1, 2024<br>Time:  10:00 a.m.<br>Courtroom: 5A<br><br>Date Action Filed: December 1, 2023<br>Trial Date:          None |

**TO THE COURT, THE PARTIES HEREIN, AND THEIR ATTORNEYS OF RECORD:  PLEASE TAKE NOTICE** that on Monday, April 1, 2024, at 10:00 a.m., in Courtroom 5A of the United States District Court for the Central District of California, Western Division, First Street Courthouse, located at 350 West First Street, Los Angeles, California 90012, United States District Judge Michael W.

1

Fitzgerald presiding, Defendants NY AND CO ECOMM LLC, a Delaware limited liability company; NY AND CO IP LLC, a Delaware limited liability company; and SAADIA GROUP LLC, a New York limited liability company, shall move, and hereby moves, for an Order:

1. Dismissing, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the entire action;

2. Dismissing, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Plaintiffs' First Amended Complaint;

5. Dismissing such causes of action without leave to amend.

This Motion is based on this Notice of Motion and accompanying Memorandum of Points & Authorities; the supporting Request for Judicial Notice; the Declaration of Levi Lesches; and any other pleadings, arguments, or matters considered by the Court.

This motion is made following conferences of counsel, pursuant to *Local Rule* 7-3, via email as well as on January 24, 2024 via videoconference.

Dated: February 16, 2024                         **LESCHES LAW**


    /s/ Levi Lesches
Levi Lesches

Attorneys for Defendants NY AND CO ECOMM LLC, a Delaware limited liability company; NY AND CO IP LLC, a Delaware limited liability company; and SAADIA GROUP LLC, a New York limited liability company

# — TABLE OF CONTENTS —

I.  INTRODUCTION ..................................................................... 8

II.  MOTION TO DISMISS UNDER RULE 12(b)(1) ........................... 13

III.  MOTION TO DISMISS UNDER RULE 12(b)(6) ........................... 14

   A.  Legal Standard On Rule 12(b)(6) Motion to Dismiss ............. 14

   B.  Legal Standard Governing Consideration of Related Documents ........................................................................... 15

IV.  LEGAL ARGUMENT ............................................................. 16

   A.  Plaintiffs' Claims are Barred by the Contractual Statute of Limitations .................................................................... 16

      i.   Plaintiffs are Necessarily Alleging a False Statement of Warranty ............................................................... 16

      ii.  Lawsuits Challenging Warranties are Subject to Browsewrap Representations ........................................ 18

   B.  It is Not Alleged that the FAL, UCL, and CLRA Apply to Across-the-Website Pricing ........................................ 21

   C.  Plaintiffs Cannot Assert Equitable Claims ......................... 25

V.  CONCLUSION ...................................................................... 26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

— TABLE OF AUTHORITIES —

Page(s)

Cases

*Alvarado v. Wal-Mart Associates, Inc.,*
  2020 WL 6526372 (C.D. Cal. Aug. 7, 2020)............................................................ 10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................ 13, 15

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983)................................................................................................ 15

*Axelrod v. Lenovo (United States) Inc.,*
  2022 WL 976971 (N.D. Cal. Mar. 31, 2022) ........................................................ 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................ 15

*Bennett v. N. Am. Bancard, LLC,*
  2022 WL 1667045 (S.D. Cal. May 25, 2022)........................................................ 10

*Branch v. Tunnell,*
  14 F.3d 449 (9th Cir. 1994) ................................................................................... 16

*Byars v. Hot Topic, Inc*.,
  656 F. Supp. 3d 1051 (C.D. Cal. 2023) ................................................................ 14

*Carvalho v. HP, Inc.,*
  2022 WL 2290595 (N.D. Cal. June 24, 2022) ...................................................... 25

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
  447 U.S. 557, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980)...................................... 21

*Chapin v. Knight-Ridder, Inc*.,
  993 F.2d 1087 (4th Cir. 1993) .............................................................................. 24

*Conservation Force v. Salazar,*
  646 F.3d 1240 (9th Cir. 2011) .............................................................................. 15

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.,*
  911 F.2d 242 (9th Cir. 1990) ................................................................................ 22

*Coto Settlement v. Eisenberg,*
  593 F.3d 1031 (9th Cir.2010) .............................................................................. 9, 12

*Daniels-Hall v. Nat'l Educ. Ass'n,*
  629 F.3d 992 (9th Cir. 2010) ................................................................................ 16

Daugherty v. Am. Honda Motor Co.,
  144 Cal.App.4th 824, 51 Cal.Rptr.3d 118 (2006) ................................................ 18

*Davis v. HSBC Bank Nevada, N.A.,*
  691 F.3d 1152 (9th Cir. 2012) .............................................................................. 16

*Denson v. Cap. Jazz Inc*.,
  2023 WL 3027434 (D. Md. Apr. 20, 2023) .......................................................... 14

DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

*DMS Servs., LLC v. Superior Ct.*,
  205 Cal. App. 4th 1346, 140 Cal. Rptr. 3d 896 (2012) ........................................... 20
*Edenfield v. Fane*,
  507 U.S. 761 (1993) ........................................................................... 11, 23, 24
*Ford Motor Warranty Cases*,
  89 Cal. App. 5th 1324, 306 Cal. Rptr. 3d 611 (2023) ........................................... 20
*Ford Motor Warranty Cases*,
  532 P.3d 270 (Cal. 2023) ....................................................................... 20
*Galbraith v. County of Santa Clara*,
  307 F.3d 1119 (9th Cir. 2002) ................................................................. 16
*Gilligan v. Jamco Dev. Corp.*,
  108 F.3d 246 (9th Cir. 1997) .................................................................. 14
*Gonzales v. Fresenius Med. Care Holdings*, No.,
  2013 WL 12116599 (S.D. Cal. Mar. 11, 2013) ......................................... 9, 13, 14
*Hauter v. Zogarts*,
  14 Cal.3d 104, 120 Cal.Rptr. 681, 534 P.2d 377 (1975) .......................................... 17
*Hill v. Gateway 2000, Inc.*,
  105 F.3d 1147 (7th Cir. 1997) ................................................................. 19
*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ................................................................. 23
*Ibarra v. Manheim Invs., Inc.*,
  775 F.3d 1193 (9th Cir. 2015) .................................................................. 9
*In re Nexus 6P Prod. Liab. Litig.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018) ........................................................ 19
*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................................................... 9, 11
*Johnson v. Riverside Healthcare Sys.*,
  534 F.3d 1116 (9th Cir. 2008) ................................................................. 15
Keith v. Buchanan,
  173 Cal.App.3d 13, 220 Cal.Rptr. 392 (1985)................................................. 18
*Kielar v. Superior Ct.*,
  94 Cal. App. 5th 614, 312 Cal. Rptr. 3d 426 (2023) ........................................... 20
*Lane v. C. A. Swanson & Sons*,
  130 Cal. App. 2d 210, 278 P.2d 723 (1955) .................................................... 8
*Lane v. C. A. Swanson & Sons*,
  130 Cal. App. .............................................................................. 16
Lee v. City of L.A.,
  250 F.3d 668 (9th Cir.2001) ................................................................... 9
*Long v. Provide Com., Inc.*,
  245 Cal. App. 4th 855, 200 Cal. Rptr. 3d 117 (2016) ........................................... 19

5

*Mazza v. American Honda*,
  666 F.3d 581 (9th Cir. 2012) ................................................................ 10
*Montemayor v. Ford Motor Co.*,
  92 Cal. App. 5th 958, 310 Cal. Rptr. 3d 82 (2023) ....................... 12, 20
*Montemayor v. Ford Motor Co.*,
  535 P.3d 1 (Cal. 2023) ......................................................................... 20
*Moore v. Apple Inc.*,
  309 F.R.D. 532 (N.D. Cal. 2015) .......................................................... 10
*Newcal Indus., Inc. v. Ikon Off.*,
  513 F.3d 1038 (9th Cir. 2008) .............................................................. 22
*Norcia v. Samsung Telecommunications Am., LLC*,
  845 F.3d 1279 (9th Cir. 2017) .................................................. 12, 18, 19
*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995) ................................................................ 25
*People v. Superior Ct. (J.C. Penney Corp.*,
  34 Cal. App. 5th 376, 246 Cal. Rptr. 3d 128 (2019) ............................ 22
*Petkevicius v. NBTY, Inc.*,
  2017 WL 1113295 (S.D. Cal. Mar. 24, 2017) ...................................... 14
*Skipper v. CareFirst BlueChoice, Inc.*,
  2023 WL 2410858 (D. Md. Mar. 8, 2023) ...................................... 13, 14
*Smith-Victor Corp. v. Sylvania Elec. Prod., Inc.*,
  242 F. Supp. 302 (N.D. Ill. 1965) ........................................................ 23
*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) .......................................................... 13, 25
*Spokeo, Inc. v. Robins*,
  578 U.S. 330, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ............. 10, 17
*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir.2007) ................................................................... 9
*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) .............................................................. 10
*U.S. v. Corinthian Colls.*,
  655 F.3d 984 (9th Cir. 2011) .......................................................... 15, 16
*Underwager v. Channel 9 Australia*,
  69 F.3d 361 (9th Cir. 1995) .......................................................... 11, 24
*United Fin. Cas. Co. v. Fleet Star, Inc.*,
  2023 WL 6370629 (S.D. Cal. May 26, 2023).......................................... 10
*Valley Broad. Co. v. United States*,
  107 F.3d 1328 (9th Cir. 1997) .............................................................. 24
*Watkins v. MGA Ent., Inc.*,
  574 F. Supp. 3d 747 (N.D. Cal. 2021) .................................................. 17

DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

*Weinstat v. Dentsply Internat., Inc.*,
   180 Cal. App. 4th 1213, 103 Cal. Rptr. 3d 614 (2010) ............................... 12, 18, 19

Statutes

Cal. Civ. Code §§ 1790–1795.8 ................................................................... 18
Cal. Com. Code § 2313(1)(a) ...................................................................... 19
Cal. Com. Code §§ 2201–2210 ................................................................... 18
Cal. Com. Code §§ 2313–2317 ................................................................... 18
*California Business & Professions Code §§ 17500* ................................... 25

Rules

Fed. R. Civ. P. 8(a)(2) .................................................................................. 14
Federal Rule of Civil Procedure 12(b)(6) ...................................... 14, 15, 16

Other Authorities

4 Witkin, Summary of California Law, Sales §§ 56–62 (10th ed. 2005) ................ 18

DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

— **MEMORANDUM OF POINTS AND AUTHORITIES** —

## I.   INTRODUCTION

Plaintiffs allege that Defendants—who are alleged to be sellers of goods, within the meaning of Article 2 of the California Uniform Commercial Code—engaged in making representations of higher value as a means of marketing.  FAC ¶¶ 32–35; 52.  Plaintiffs allege that such marketing practices had an impact on Plaintiffs' purchasing choices.  FAC ¶¶ 42, 50.  Plaintiffs further allege that Defendants' alleged marketing methods are recognized as constituting an effective means of consumer persuasion, FAC ¶¶ 52–57, except that the means of such persuasion are misleading and therefore improper and unlawful.  *Id.*

The nature of Plaintiffs' allegations are that Defendants' challenged representations were warranties—namely, that Defendants' representations went to representing that the sold "goods [we]re of a particular standard, quality, or grade." FAC ¶ 118(c).  Indeed, the FAC makes extensive allegations that the "natural tendency of [Defendants'] affirmation[s were] . . . to induce the buyer to purchase the goods," and that "the buyer[s] purchas[ing] the goods rel[ied] thereon."  *Lane v. C. A. Swanson & Sons*, 130 Cal. App. 2d 210, 214, 278 P.2d 723, 725 (1955); FAC ¶¶ 42, 50, 52–57, 59.  In short, Plaintiffs expressly allege that Defendants' representations were intended as express warranties.  *See also* Cal. Uniform Comm. Code ("CUCC"), § 2313, cmt. 8; *see also* FAC ¶¶ 118(c), 118(d).  Plaintiffs further allege that those warranties were false, and that the damages caused by the falsity of the Defendants' alleged warranties exceed $5,000,000, as to California purchasers, for purchases made between September 4, 2020, and January 31, 2024.  FAC ¶¶ 19, 68.

For numerous reasons, Plaintiffs' FAC must be dismissed *in toto*.  First, there is no subject-matter jurisdiction over Plaintiffs' action.  Plaintiffs fail to allege *Iqbal*-sufficient allegations supporting CAFA jurisdiction.  Plaintiffs allege, in conclusory fashion, that there is more than $5,000,000 in controversy.  FAC ¶ 19.

However, this Court can judicially notice that the most expensive item sold on Defendants' website is marketed for $148.  Lesches Decl., **RFJN, Ex. A;** *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014).  In addition to judicial notice, the FAC's reliance on Defendants' website allows the Court to consider the website in totality, so as to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir.2010); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.2007); *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir.2001).[1]  The second most-expensive item sold on Defendants' website is marketed for $89.99.  Plaintiffs acknowledge that the Class Period cannot reach back prior to September 4, 2020.  FAC ¶ 68.  Accordingly, Plaintiffs' jurisdictional allegations contend—without supporting factual allegations—that, for *every* calendar day in the alleged Class Period (*i.e.*, September 4, 2020, to January 31, 2024), Defendants sold *daily* at least 27 articles of Defendants' *most* expensive item of apparel to California residents (*i.e.*, $5 million ÷ $148 ÷ 1228 days).  Alternatively, if California residents were purchasing Defendants' third most-expensive item of apparel, Plaintiffs' meritless jurisdictional allegations necessarily would need to assume the daily sale of at least 45 items to California residents (*i.e.*, $5 million ÷ $90 ÷ 1228 days).  There is not the slightest shred of plausible factual matter alleged in support of Plaintiffs' wild speculation.  Accordingly, the Court should dismiss for lack of subject-matter jurisdiction.  *Cf. Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015); *Gonzales v. Fresenius Med. Care Holdings*, No. 12CV2488, 2013 WL 12116599, at *2 (S.D. Cal. Mar. 11, 2013);

---

[1] Indeed, Plaintiffs allege that they can use internet tools (such as archive.org) to research Defendants' prior listing history relating to products that Defendants previously advertised on their website.  FAC ¶ 34.  Plaintiffs, accordingly, allege sufficient matter to establish that Plaintiffs have the reasonable capacity to engage in a good-faith investigation, in the manner required by Rule 11, of their theory that $5 million is in controversy.  Plaintiffs have not done so.  The reality is that Plaintiffs lack any basis for alleging that CAFA jurisdiction exists.

*United Fin. Cas. Co. v. Fleet Star, Inc.*, 2023 WL 6370629, at *2 (S.D. Cal. May 26, 2023).

Even if the Court were to decline to dismiss for lack of subject-matter jurisdiction, the Court should dismiss the class allegations because Plaintiffs seek to represent a class without concrete injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Because the class definition is *defined* to encompass uninjured individuals, *see* FAC ¶ 73(a) – (j), the class allegations are deficient. *Moore v. Apple Inc.*, 309 F.R.D. 532, 542 (N.D. Cal. 2015). A court must "ensure that [a] class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016); see also *Mazza v. American Honda*, 666 F.3d 581, 594 (9th Cir. 2012) *overruled in part by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, No. 19-56514, 2022 WL 1053459, at *19 (9th Cir. Apr. 8, 2022); *Bennett v. N. Am. Bancard, LLC*, 2022 WL 1667045, at *9 (S.D. Cal. May 25, 2022). The insufficiency of Plaintiffs' class allegations may be scrutinized by way of a Rule 12(b)(6) motion to dismiss. *Alvarado v. Wal-Mart Associates, Inc.*, No. 2:20-cv-01926-AB (KKx), 2020 WL 6526372, at *3 (C.D. Cal. Aug. 7, 2020) ("Before a plaintiff can obtain class discovery and put a defendant through the expense of opposing class certification, she must at least plausibly allege that the asserted claims might apply to others in the putative class"). Because Plaintiffs have expressly sought to define the proposed class *without* reference to whether putative members relied, or detrimentally relied, on Defendants' representations, the class allegations are simply non-cognizable and must be dismissed.[2] FAC ¶ 73(a)–(j).

---

[2] Relatedly, Plaintiffs, in other points in the pleading, allege, in conclusory fashion, that other putative Class Members relied on Defendants' representations. *See, e.g.*, FAC ¶ 122; ¶¶ 131–133. But Plaintiffs *decline* to allege that they intend to solely represent a class that relied on Defendants' representations and made purchasing decisions based thereon. FAC ¶ 73(a)–(j).

Furthermore, the First Amendment precludes Plaintiffs from seeking to represent a class absent *Iqbal* sufficient allegations that Defendants' representations were *likely* to deceive a reasonable consumer in 2020 or thereafter.  The FAC seeks to burden commercial speech, and, accordingly, the statutory violations alleged by Plaintiffs must proscribe: (1) misleading statements; *and* (2) must regulate allegedly misleading commercial speech in a manner that is "[]effective or [non]remote support for the government's purpose."  *Edenfield v. Fane*, 507 U.S. 761, 771 (1993).  In other words, misleading commercial speech cannot be regulated simply because it *might* be misleading.  If such speech could be regulated, "puffery" would be actionable.  However, "rhetorical hyperbole" is decidedly nonactionable. *Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995).  The First Amendment requires the Plaintiffs to allege that, as to the reasonable internet consumer purchasing during the class period, the Fair Advertising Law ("FAL"), and the other statutory proscriptions asserted by Plaintiffs, are *not* "remote" from the government's objective of preventing consumers from being misled.

As explained below, Plaintiffs cannot meet such pleading standard.  The informational access that has become available to internet consumers in the past 3 years renders it unlikely that a reasonable consumer will be detrimentally deceived by a website that features *across-the-website* reduced pricing.  Relatedly, the allegations in ¶ 97 of the FAC are entirely conclusory and fail to allege factual matter supporting the contentions of law contained in paragraph 97.

Next, Plaintiffs' individual claims are time-barred, and Plaintiffs therefore cannot represent putative members with theoretically timely claims.  The Court can judicially notice, *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1024, that Plaintiff Mosley did not transact with any of the named Defendants.  Even as to Plaintiff Mitchell, the Court can judicially notice the contractual statute of limitations contained in the "Terms & Conditions" link at the bottom of each webpage on Defendants' website.

Generally, "browsewrap" agreements (*i.e.* terms stated on a webpage, to which the consumer does not manifest consent) do *not* result in enforceable contracts, due to the absence of manifestation of assent by the consumer. *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1288 (9th Cir. 2017). An exception, controlling here, arises under footnote 3 of *Norcia*: unilateral statements that accompany a seller's unilateral warranties (including, as relevant here, a seller's unilateral warranties of quality). Because seller's unilateral statements of warranty are sufficient to bind the seller, regardless of the buyer's manifestation of assent to those representations, *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1228, 103 Cal. Rptr. 3d 614, 627 (2010), the seller's unilateral statements of terms and conditions (including arbitration) are sufficient to control a buyer's challenges to the veracity of the seller's warranties. *See Norcia*, 845 F.3d at 1288 n.3; *see also Montemayor v. Ford Motor Co.*, 92 Cal. App. 5th 958, 969, 310 Cal. Rptr. 3d 82, 91 (2023).

Defendants will move separately to compel arbitration of the Plaintiffs' claims under § 4 of the Federal Arbitration Act. As relevant herein, those terms and conditions, which constitute part of the webpages alleged in the FAC itself, *Coto Settlement*, 593 F.3d at 1038, impose a one (1) year contractual statute of limitations. **RFJN, Ex. B, C.** Even if the Court declines to find that the seller's unilateral statements of arbitration are sufficient to require the arbitration of claims challenging the veracity of the seller's warranties, the website terms and conditions are still sufficient to bind the Plaintiffs to the contractual one-year limitation period. The terms and conditions contain a *bilateral* contractual statute of limitations, shortening Plaintiffs' and Defendants' time to raise claims against each other to one (1) year. Under *Weinstat* and *Montemayor*, those terms and conditions are sufficient to bind the seller—regardless the presence of mutual assent—and those representations are similarly sufficient to limit the buyers' challenges against Defendants' express warranties to one year. CUCC § 2275. Because both Plaintiffs

12

1  filed suit more than one year after receipt of the Defendants' representations that

2  Plaintiffs now challenge, Plaintiffs' suit is time barred.

3       Next, Plaintiffs specifically plead claims in *quasi contract* and fraud, as well

4  as actual damages under the CLRA, and, for such reason, this Court should dismiss

5  all Plaintiffs' claims for equitable relief under the UCL, the FAL, and for equitable

6  relief under the CLRA.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th

7  Cir. 2020).  Plaintiffs' claims are also subject to arbitration, and Defendants will

8  move separately to compel arbitration.

9       For the foregoing reasons, this Court should dismiss the action for lack of

10  subject-matter jurisdiction.  If the Court declines to do so, and declines to grant

11  Defendants' motion to compel arbitration, the Court should dismiss all claims as

12  time-barred.  Additionally, all equitable claims should be dismissed, due to

13  Plaintiffs' claims for legal relief.  Additionally, Plaintiffs should be required to

14  allege factual matter establishing that the UCL, FAL, and CLRA, as applied to post-

15  2020 internet commerce, regulates internet commerce in a manner that is non-

16  remote to the governmental objective of curbing misleading advertising.

17  **II.    MOTION TO DISMISS UNDER RULE 12(B)(1)**

18       Rule 8(a) requires, at a minimum, that a Plaintiff set forth jurisdictional

19  allegations that do more than permit the court to infer the mere *possibility* of

20  jurisdiction.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009).  The Plaintiffs must

21  set forth sufficient jurisdictional allegations of *factual* matter, consistent with Rule

22  11, that, if taken as true, establish the minimal diversity requirements of CAFA.

23  *Gonzalez*, 2013 WL 12116599, at *2.

24       There is scant authority addressing the pleading burden for CAFA jurisdiction

25  in non-removed actions.  However, numerous district courts have agreed that

26  sufficient factual matter must be alleged, under the heightened *Iqbal* pleading

27  standard, to support a conclusion that CAFA jurisdiction is appropriate.  *Skipper v.*

28  *CareFirst BlueChoice, Inc.*, 2023 WL 2410858, at *3 (D. Md. Mar. 8, 2023);

13

*Denson v. Cap. Jazz Inc*., 2023 WL 3027434, at \*3 (D. Md. Apr. 20, 2023); *Skipper v. CareFirst BlueChoice, Inc*., 2023 WL 2410858, at \*4 (D. Md. Mar. 8, 2023).

As in *Gonzales*, this Court should dismiss for Plaintiffs' failure to allege CAFA jurisdiction.[3]  Here, there is a *complete absence of allegations* regarding the estimated damages per putative class member and the anticipated class size. Accordingly, greater pleading specificity is required.  *See Gonzales*, 2013 WL 12116599, at \*2.  Assuming that *every* class member purchased the $148 "INA Long Sleeve Lace Inset Midi Dress," Plaintiffs' FAC still necessarily presupposes a class based on at least 33,783 "INA Long Sleeve Lace Inset Midi Dress[es]" sold to California purchasers since September 2020.  If the putative Class purchased cheaper items, Plaintiffs presuppose the sale of hundreds of thousands of clothing articles to California consumers since September 2020.  Having failed to allege the basis for this remarkable implied allegation, Plaintiffs' FAC must be dismissed. *Byars v. Hot Topic, Inc*., 656 F. Supp. 3d 1051, 1061 (C.D. Cal. 2023); *Petkevicius v. NBTY, Inc*., 2017 WL 1113295, at \*4 (S.D. Cal. Mar. 24, 2017).

## III.   MOTION TO DISMISS UNDER RULE 12(B)(6)

### A.   Legal Standard On Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled, based on what is pled, to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), requiring a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).

---

[3] A resolution far more elegant than Rule 11 proceedings.

A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011); *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008). For a plaintiff to survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "plausibility" standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Although the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and there can be no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678–79. It is not proper "to assume that [Plaintiff] can prove facts that [she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**B.   Legal Standard Governing Consideration of Related Documents**

As a general rule, courts "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *U.S. v. Corinthian Colls.*, 655 F.3d 984, 998

(9th Cir. 2011).  However, a document "is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *reversed on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  A district court may consider "unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 999.

In the Ninth Circuit, it is deemed a matter of judicial discretion whether to consider "the document [that] forms the basis of the plaintiff's claim" in the context of a motion to dismiss under Rule 12(b)(6).  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

Here, the website terms and conditions have been retrieved using the very same method that Plaintiffs ¶ 34 utilized to research the pricing history of the products purchased by Plaintiffs.  *See* Lesches Decl.  Furthermore, Defendants' website is central to Plaintiffs' claim.  Last, the authenticity of the documents cannot be questioned.  Accordingly, this Court should exercise its discretion to consider the documents containing the website terms and conditions.

## IV.   LEGAL ARGUMENT

### A.   Plaintiffs' Claims are Barred by the Contractual Statute of Limitations

#### i.   Plaintiffs are Necessarily Alleging a False Statement of Warranty

The Plaintiffs necessarily allege that Defendants' representations amounted to affirmations that sought to induce the Plaintiffs to buy the goods.  *Lane v. C. A. Swanson & Sons*, 130 Cal. App. at 214.  Aside from the fact that Plaintiffs' FAC alleges such theory, myriad times, Plaintiffs would lack Article III standing under

16

any other theory.  Plaintiffs cannot enforce in this Court statutory remedies for procedural violations that did *not* injure them in any way.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016).  Nor is it alleged that the Parties entered into a contractual *term* that Defendants breached, causing injury to Plaintiffs (*e.g.*, item shipped to the wrong address, different amount charged to the credit card, delivery of different items, missing items, etc.).  Rather, Plaintiffs claim that they understood, and/or relied on, the Defendants' statements regarding price as a "description of the goods which is made part of the basis of the bargain."  Cal. Uniform Comm. Code ("CUCC") § 2313(1)(b).  Because that is Plaintiffs' theory: (1) their claims must be arbitrated, for the reasons set forth more fully in Defendants' motion to compel arbitration; and (2) their claims are contractually time barred.

Of note, subdivision (2) of CUCC § 2313 provides that "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  However, this merely means that such statements cannot *automatically* be considered a basis for the bargain, without regard to the Defendants' reliance.  *See* cmt. 3 & 8; *Hauter v. Zogarts*, 14 Cal.3d 104, 120 Cal.Rptr. 681, 534 P.2d 377 (1975); *Watkins v. MGA Ent., Inc*., 574 F. Supp. 3d 747, 757 (N.D. Cal. 2021).  As stated, Plaintiffs cannot proceed on the theory that they are alleging a violation of the FAL and/or the UCL which they did *not* rely on, because Plaintiffs, under such theory, would lack Article III standing.  *Spokeo, Inc.*, 578 U.S. at 341.  While CUCC § 2313(2) precludes a buyer from *categorically* characterizing representations of price as constituting a warranty, nothing in CUCC § 2313(2) stands for the proposition that a buyer is *precluded* from alleging that the seller communicated value, or commendation of the goods, in a manner that constituted a warranty.  As stated, Plaintiffs have made precisely those allegations.

For such reason, Plaintiffs are bound by the website terms and conditions for any claims challenging Defendants' warranties. The relevant website, through which Plaintiffs claim to have purchased the Defendants' products, was subject to Terms & Conditions, which provided, in relevant part, that: (1) a complaining consumer would be required to make a prefiling demand; (2) that if the prefiling demand failed to resolve the issue to the Defendants' satisfaction, the complaining consumer would need to submit his or her claims to arbitration; and that (3) all claims, by either party, were subject to a one-year contractual limitations period. **RFJN, Ex. B, C.**

        ii.   <u>Lawsuits Challenging Warranties are Subject to Browsewrap Representations</u>

A Sellers' representations are viewed in the totality, and that, for such reasons, a plaintiff cannot accept some portion of the website's representations while rejecting others. *Norcia*, 845 F.3d at 1288. As this Circuit has held:

> Samsung's reliance on Weinstat is misplaced, because it is based on a misunderstanding of the difference between California warranty law and contract law, which are governed by different sets of rules. Compare Cal. Com. Code §§ 2201–2210 (governing contract formation), with Cal. Com. Code §§ 2313–2317 and Cal. Civ. Code §§ 1790–1795.8 (governing the formation of express and implied warranties). A seller is bound by any express warranties given to the buyer, including statements in written warranty agreements, advertisements, oral representations, or presentations of samples or models. See Keith v. Buchanan, 173 Cal.App.3d 13, 20, 220 Cal.Rptr. 392 (1985); see also 4 Witkin, Summary of California Law, Sales §§ 56–62 (10th ed. 2005). Language in a written warranty agreement is "contractual" in the sense that it creates binding, legal obligations on the seller, see Daugherty v. Am. Honda Motor Co., 144 Cal.App.4th 824, 830, 51 Cal.Rptr.3d 118 (2006), but a warranty does not impose binding obligations on the buyer. Rather, warranty law "focuses on the seller's behavior and obligation—his or her affirmations, promises, and descriptions of the goods—all of which help define what the seller in essence agreed to sell." Weinstat, 180 Cal.App.4th at 1228, 103 Cal.Rptr.3d 614 (internal quotation marks omitted); see also Cal. Com.

Code § 2313 . . . .   But a warranty generally does not impose any independent obligation on the buyer outside of the context of enforcing the seller's promises. Weinstat, 180 Cal.App.4th at 1228, 103 Cal.Rptr.3d 614 ("[T]he whole purpose of warranty law is to determine what it is that the seller has in essence agreed to sell...." (internal quotation marks omitted)); Cal. Com. Code § 2313(1)(a) (stating that an express warranty is a "promise made by the seller to the buyer which relates to the goods"). A condition that must be satisfied before a consumer can enforce a warranty is not equivalent to a freestanding obligation that limits a buyer's rights outside of the scope of warranty itself.

After distinguishing between obligations arising from "freestanding obligation[s]" and obligations that are imposed on the *seller*, without concurrent obligations by the buyer, due to "affirmations, promises, and descriptions of the goods," *see id.* at 1289, the Court in *Norcia* wrote:

> Under *Weinstat*, Samsung may be able to require Norcia to arbitrate claims arising out of the Standard Limited Warranty contained in the Product Safety & Warranty Information brochure, but we need not consider the enforceability of any such limitation because Norcia has not brought any warranty claims against Samsung.

*Id.* n. 3.  Here, unlike *Norcia*, Plaintiffs *are* attempting to assert that Defendants sold them goods less valuable than depicted.[4]  Accordingly, Plaintiffs cannot accept part of the website representations while rejecting the contractual limitations provision. *Norcia*, 845 F.3d at 1288 n.3; *see also* Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1149 (7th Cir. 1997).

For such reason, this case is *not* a "browsewrap" case.  *See, e.g.,* Long v. Provide Com., Inc., 245 Cal. App. 4th 855, 863, 200 Cal. Rptr. 3d 117, 123 (2016). The FAC challenges Plaintiffs' *representations* by the Defendants, which Plaintiffs claim as constituting representations going to the basis of the bargain.  In re Nexus 6P Prod. Liab. Litig., 293 F. Supp. 3d 888, 915 (N.D. Cal. 2018).  As held in footnote 3 to *Norcia*, nothing stops a seller from imposing qualifications on its

---

[4] Unless, alternatively, Plaintiffs are complaining about a procedural violation that failed to cause them concrete injury.

representations.  *See also Civ. Code* § 3521 ("He who takes the benefit must bear the burden").  In the realm of *contractual* rights (*i.e.*, as contrasted with warranties), it is well-established that "one should not be permitted to rely on an agreement containing an arbitration clause for its claims, while at the same time repudiating the arbitration provision contained in the same contract." *Montemayor v. Ford Motor Co.*, 92 Cal. App. 5th 958, 969, 310 Cal. Rptr. 3d 82, 91 (2023) (*citing DMS Servs., LLC v. Superior Ct.*, 205 Cal. App. 4th 1346, 1354, 140 Cal. Rptr. 3d 896, 902 (2012)).  Similarly here, the Plaintiffs cannot seek to challenge Defendants' representations while ignoring the other representations made by Defendants.

"California law does *not* treat manufacturer warranties imposed outside the four corners of a retail sale contract as part of the sale contract.*" Ford Motor Warranty Cases*, 89 Cal. App. 5th 1324, 1335, 306 Cal. Rptr. 3d 611, 621 (2023); *Montemayor*, 92 Cal. App. 5th at 969.  Of note, the California Supreme Court has accepted review of *Ford Motor Cases* and *Montemayor*. *Ford Motor Warranty Cases*, 532 P.3d 270 (Cal. 2023); *Montemayor v. Ford Motor Co.*, 535 P.3d 1 (Cal. 2023).  "Whether a manufacturers' express or implied warranties that accompany a vehicle at the time of sale constitute obligations arising from the sale contract, permitting manufacturers to enforce an arbitration agreement in the contract pursuant to equitable estoppel is a question now pending before our Supreme Court." *Kielar v. Superior Ct.*, 94 Cal. App. 5th 614, 621, 312 Cal. Rptr. 3d 426, 431 (2023).

As applicable here, the issue left open by the Ninth Circuit in footnote 3 of *Norcia* is only susceptible of a single resolution.  If a party is challenging representations going to the basis of the bargain, a party may not accept the representations as a basis for liability against the seller while simply ignoring the seller's concurrent representation that disputes pertaining to those representations are subject to a one-year resolution period and/or are to be arbitrated.

Defendants further note that, after the *Local Rule* 7-3 conference, Plaintiffs dismissed the Fifth Cause of Action for Breach of Implied Contract contained in the initial Complaint.  The allegations in ¶ 134 of Plaintiffs' Complaint, however, constitute Plaintiffs' judicial admission that *Plaintiffs* contend the terms and conditions constituted a binding contract.  Even if those allegations do not bind Plaintiffs, Plaintiffs continue to allege—particularly in ¶ 118(c) and ¶ 118(d) of the FAC, amongst other numerous allegations—that Defendants engaged in inaccurate warranties.

Here, the terms and conditions provide:

> TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IF YOU OR WE WANT TO ASSERT A DISPUTE (BUT NOT A EXCLUDED DISPUTE) AGAINST THE OTHER, THEN YOU OR WE MUST COMMENCE IT (BY DELIVERY OF WRITTEN NOTICE AS SET FORTH IN SECTION (A)) WITHIN ONE (1) YEAR AFTER THE DISPUTE ARISES -- OR IT WILL BE FOREVER BARRED.

Such limitation is enforceable under section 2275 of the CUCC.  Additionally, the language is set forth in bold, and contains a mutually applicable limitation on the time for the buyer *or seller* to maintain an action.  The Plaintiffs' claims do not pertain to intellectual property, and, therefore, are not excluded disputes.

For such reason, the Plaintiffs' FAC should be dismissed as timebarred.

## B.   It is Not Alleged that the FAL, UCL, and CLRA Apply to Across-the-Website Pricing

Plaintiffs' FAL claims, and related UCL and CLRA claims, must be dismissed because it is not alleged that the Defendants' challenged speech is "more likely to deceive *the public* than to inform it."  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563, 100 S. Ct. 2343, 2350, 65 L. Ed. 2d 341 (1980).  Plaintiffs took full advantage of the informational superiority furnished by the information highway provided by the internet.  As the FAC itself alleges, with illustrations, the internet provides resources whereby any consumer caring to inform

21

himself or herself of price histories has full capacity to investigate such issues. Applying the FAL to internet commerce simply runs afoul of the First Amendment, because internet commerce inherently contemplates that the consumer has ease of comparison and alternative options. Litigants like Plaintiffs, who seek to apply *pre-internet* advertising statutes to a context where the consumer possesses unfettered informational access, serve as the unwitting "cat's paw" for entrenching the ever-growing monopolies of internet retailing behemoths like Amazon, eBay, Shein, Alibaba, and the like. Through stifling forms of internet advertising, Plaintiffs unwittingly entrench the staying power of internet retailers generally perceived as bordering on the monopolistic.

Plaintiffs may counter that Defendants are not engaged in legitimate means of advertising. The reality is that, in the internet age, Plaintiffs allege little more than classic puffery. *Newcal Indus., Inc. v. Ikon Off. Sol*., 513 F.3d 1038, 1053 (9th Cir. 2008). "[T]he determination of whether an alleged misrepresentation "is a statement of fact" or is instead "mere puffery" is a legal question that may be resolved on a Rule 12(b)(6) motion." *Id.* As disclosed by Plaintiffs' own pleading, there are internet resources that can be used to track price history. While this is not an evidentiary motion—which would allow the Defendants to present the plethora of internet shopping tools, used by the average consumer, which simply eviscerate the notion of consumer deception—here, Plaintiffs' FAC *itself* raises allegations as to one such tool, archive.org, disclosing the ability to investigate price history.

Because the relevant statutes burden significant swathes of protected speech, *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 398, 246 Cal. Rptr. 3d 128, 145 (2019), *as modified on denial of reh'g* (May 6, 2019), it is Plaintiffs' burden to allege particularized allegations explaining that the reasonable *internet consumer between 2020 and the present* would likely be deceived. *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc*., 911 F.2d 242, 246 (9th

1   Cir. 1990); *Smith-Victor Corp. v. Sylvania Elec. Prod., Inc*., 242 F. Supp. 302, 308

2   (N.D. Ill. 1965).

3        To put the point more bluntly, Plaintiffs argue that companies in the business

4   of selling higher-quality goods lower prices **must** *foster a marketing image* of

5   cheap, non-quality goods.  Plaintiffs do not deny that the challenged practices foster

6   an image of quality goods.  In fact, Plaintiffs affirmatively allege such matter.

7   The Plaintiffs actually allege that "the presence of a higher reference price enhances

8   subjects' perceived value."  FAC ¶ 52; *see also* FAC ¶¶ 53–57.  Indeed, as noted in

9   *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1106 (9th Cir. 2013), *as amended on denial*

10   *of reh'g and reh'g en banc* (July 8, 2013), pricing marketing affects perception of

11   value.

12        Taking Plaintiffs' theory to its logical conclusion proves the fallacy.  In

13   Plaintiffs' view, technical inaccuracy in representing price history justifies punitive

14   remedies, no matter the marketing context.  In Plaintiffs' view, even at the point

15   where consumer empowerment reaches the very informational apex, marketing

16   prohibitions will remain frozen in time.  Even if artificial intelligence were to

17   progress to the point that a consumer could submit a weblink for an item of apparel

18   to an AI bot and receive a detailed breakdown of the country of origin, manufacturer

19   identity, costs of raw goods, costs of labor, retailer's costs, shipping costs, etc.—

20   nevertheless, Plaintiffs apparently maintain that regardless of the degree of

21   informational price transparency available to the consumer, the retailer will continue

22   to remain bound by statutory proscriptions, predating the invention of the internet,

23   which will prohibiting the retailer from using statements of opinion of value to

24   promote consumer perception of the seller's products.

25        First Amendment jurisprudence precludes applying speech regulation in so

26   rigid a manner.  *Edenfield*, 507 U.S. at 771.  Potential to mislead cannot, alone,

27   justify *plenary* regulation over commercial speech.  The regulation must also be

28   *effective*, and *nonremote*, to accomplishing the purpose of preventing deception and

23

protecting consumers.  *Id.*  The true takeaway from *Hinojos* is that, with respect to a seller's statements of price, to the extent that such advertising is *likely* to "*deceive* consumers into making purchases they would not otherwise make,*" then California could certainly render such advertising actionable.

Plaintiffs' view of fair advertising—*i.e.*, Plaintiffs' view that advertising restrictions remain enforceable, even when, due to changed societal conditions, the practices are no longer likely to deceive—does not promote consumer welfare. Rather, Plaintiffs' view harms market choices.  Plaintiffs seek to permanently enjoin any ability to launch an e-commerce business that characterizes lower-priced goods as being qualitatively superior than the retailer's pricing point.

To the extent that such practices *mislead*, Plaintiffs' position would be justifiable.  However, Plaintiffs fail to allege *Iqbal* sufficient matter to establish that, even with respect to the informational transparency available to the 2020 internet shopper, such practices are likely to mislead.  Plaintiffs' pleading simply alleges old regulatory commentary and academic research, without addressing the contemporary viability of those conclusions.  Analogizing modern internet commerce to a consumer perusing a Skymall magazine from his or her Continental Airlines economy-class seat is a fallacy.  While mail-order-catalog shoppers were likely to be misled by the assertion that items were being offered at a "discount price" for a "limited time only," such assertions require greater pleading specificity in an age where the consumer can, with the click of a button, search the world over for substantially identical items.

Plaintiffs *cannot* assert regulatory statutes proscribing potentially misleading statements "if [the regulation] provides only ineffective or remote support for the government's purpose."  *Valley Broad. Co. v. United States*, 107 F.3d 1328, 1334 (9th Cir. 1997); *Edenfield v. Fane*, 507 U.S. 761, 771 (1993).  To put the same point a different way, "rhetorical hyperbole" is not actionable. *Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d

24

1  1087, 1093 (4th Cir. 1993) (holding that "hefty mark-up" was a nonactionable

2  statement of opinion).  "'Where the question of truth or falsity is a close one, a court

3  should err on the side of nonactionability.'"  *Partington v. Bugliosi*, 56 F.3d 1147,

4  1159 (9th Cir. 1995).  The instant lawsuit demonstrates why the FAL "provides only

5  ineffective or remote support for the government's purpose.  The Plaintiffs do not

6  allege that they are unhappy with the quality of the products.  Indeed, Plaintiffs do

7  **not** seek recission.

8      As the informational space evolves to provide greater informational access to

9  consumers, it must remain the *plaintiff's* burden to allege that, even in light of

10  informational access, the challenged commercial speech properly remains a subject

11  of governmental regulation.  *Partington*, 56 F.3d at 1159 ("a court should err on the

12  side of nonactionability").  Plaintiffs cannot keep recycling boilerplate allegations

13  regarding the harmful nature of the challenged conduct, through citing analyses

14  from 1990.  ¶ 56.  Plaintiffs must allege that, in modern market conditions,

15  Defendants' actions are likely to mislead the purported Class Members into

16  believing that the mark downs represent an actual sale rather than the seller's

17  expression of the belief that the goods harbor superior value.

18      **C.    Plaintiffs Cannot Assert Equitable Claims**

19      Plaintiffs' assertion of legal remedies, including a fraud cause of action,

20  precludes federal equitable jurisdiction over Plaintiffs' claim under the Unfair

21  Competition Law.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir.

22  2020).  For equivalent reasons, this Court must dismiss Plaintiffs' asserted claims

23  under the False Advertising Act, *California Business & Professions Code* §§ 17500

24  *et seq.*  *Axelrod v. Lenovo (United States) Inc.*, 2022 WL 976971, at *3 (N.D. Cal.

25  Mar. 31, 2022).  Even those district courts that have allowed plaintiffs to proceed

26  with equitable claims for restitution have done so after the Plaintiffs had dismissed

27  their damages claims.  *Carvalho v. HP, Inc.*, 2022 WL 2290595, at *7 (N.D. Cal.

28

June 24, 2022) ("The Court finds that Plaintiffs may proceed with their equitable restitution claims at this stage, especially given that they have now dismissed their breach of contract claim. The Court may reconsider this issue at a later stage of the case").  Here, conversely, the Plaintiffs realleged their damages claims even *after* the Defendants raised *Sonner* in the prefiling conference under *Local Rule* 7–3 relating to the initial Complaint.  Lesches Declaration.  Despite being on notice of the issue, Plaintiffs failed to allege, through *Iqbal*-sufficient allegations, that Plaintiffs lack an adequate remedy at law.  Instead, Plaintiffs philosophize in the abstract regarding the judiciary's broad equitable latitude, without offering any particularized, nonconclusory allegations demonstrating an absence of viable legal relief.  *See* FAC ¶¶ 102, 114.

## V.        CONCLUSION

For the foregoing reasons, this Court should dismiss the action for lack of subject-matter jurisdiction.  If the Court declines to do so, and declines to grant Defendants' motion to compel arbitration, the Court should dismiss all claims as time-barred.  Additionally, all equitable claims should be dismissed, due to Plaintiffs' claims for legal relief.  Additionally, Plaintiffs should be required to allege factual matter establishing that the UCL, FAL, and CLRA, as applied to post-2020 internet commerce, regulates internet commerce in a manner that is non-remote to the governmental objective of curbing misleading advertising.

Dated: February 16, 2024               **LESCHES LAW**


                                         /s/ Levi Lesches
                                        Levi Lesches

                                        Attorneys for Defendants NY AND CO
                                        ECOMM LLC, a Delaware limited liability
                                        company; NY AND CO IP LLC, a Delaware
                                        limited liability company; and SAADIA
                                        GROUP LLC, a New York limited liability
                                        company

## **Local Rule 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendants, certify that this brief contains 6,028 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 16, 2024          **LESCHES LAW**


   /s/ Levi Lesches
Levi Lesches

Attorneys for Defendants NY AND CO ECOMM LLC, a Delaware limited liability company; NY AND CO IP LLC, a Delaware limited liability company; and SAADIA GROUP LLC, a New York limited liability company

DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT